**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janette Bell,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. CV-12-08179-PCT-NVW<br><br>**ORDER** |

Plaintiff Janette Bell seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

　　**A.   Factual Background**

Bell was born in January 1964. She completed high school and is able to communicate in English. She has worked as a housecleaner, grocery clerk, server, personnel clerk, and pharmacy clerk. She has been diagnosed with chronic obstructive pulmonary disease ("COPD"), fibromyalgia, migraine headaches, and possible seizure disorder. She had right hip surgery after a motor vehicle accident in 1994. In her

Opening Brief, Bell states that her "most compelling problem is respiratory in nature" and that her medical problems "include COPD, fibromyalgia, and migraine headaches."

### B.  Procedural History

On October 1, 2007, Bell protectively applied for supplemental security income, alleging disability beginning July 10, 2007. On July 16, 2010, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On November 18, 2010, the ALJ issued a decision that Bell was not disabled within the meaning of the Social Security Act. The Appeals Council denied Bell's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On September 6, 2012, Bell sought review by this Court.

## II.  STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 416.920(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 416.920(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### IV. ANALYSIS

The ALJ found that Bell has not engaged in substantial gainful activity since October 1, 2007. At step two, the ALJ found that Bell "has the following severe

- 3 -

impairments: chronic obstructive pulmonary disease (COPD), fibromyalgia, a history of right hip fracture, carpal tunnel syndrome, questionable history of stroke, seizure, migraines, a history of polysubstance abuse and an adjustment disorder with depressed mood." At step three, the ALJ determined that Bell does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Bell:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant cannot be exposed to hazards or to extremes of heat or cold. She must avoid fumes. She can perform the simple and repetitive tasks characteristic of unskilled work. She must avoid ladders, ropes or scaffolds, but she can perform other postural activities occasionally.

The ALJ concluded that Bell is unable to perform any past relevant work. At step five, the ALJ found that, considering Bell's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in

- 4 -

the record. *Id.* Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

- 5 -

Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632.

### 2. Treating Neurologist Ronald Bennett, M.D.

On August 4, 2008, Bell began seeing Dr. Bennett, a neurologist, with complaints of headaches and seizures. During the initial consultation, Bell reported that she also suffered from fibromyalgia, chronic depression, and alcoholism. She reported being sober for the past year and a former smoker. Dr. Bennett's initial consultation report lists recommendations, including adding a tricyclic antidepressant to Bell's regimen because it has more effect on headaches than a serotonin reuptake inhibitor such as Paxil.

Bell returned to see Dr. Bennett four more times during August 2008. An abnormal EEG study on August 11, 2008, indicated a probable source for a clinical seizure disorder. On August 14, 2008, Dr. Bennett conducted a visual evoked potential study and an auditory evoked potential study, both of which were normal. On October 3, 2008, a chart note states that Bell wanted Dr. Bennett to write a prescription for an antidepressant other than Paxil because he had told her Paxil was not "headache friendly."

On July 15, 2010, Dr. Bennett reported that Bell had requested that he fill out her Ability to Work Activity Form in support of her disability application. He said that he had not seen her since April 2010 when she saw him for headaches, but the record does not include treatment notes from April 2010. Dr. Bennett stated that Bell's "problem is migraine," but she also has severe anxiety and depression. He also stated that, because of her limp and problems with her right leg, he would like to do an electromyography test to determine whether she has nerve damage from her motor vehicle accident and surgery sixteen years earlier. The electromyography and nerve conduction tests performed on

July 15, 2010, showed "evidence for a polyneuropathy bilaterally, both motor and sensory." On July 15, 2010, Dr. Bennett partially completed a Medical Assessment of Ability to Do Work Related Activities form, on which he indicated that Bell "can not stand or walk for a long duration" and in an 8-hour work day can stand or walk 0 hours. He opined that Bell can never bend, squat, crawl, climb, or reach. He did not complete the questions regarding her ability to sit, lift, carry, or use her hands. He indicated that pain or fatigue (he did not indicate which) moderately affect Bell's ability to function.

Bell contends the ALJ erred by giving Dr. Bennett's July 15, 2010 opinion "less weight." The ALJ provided the following clear, convincing, specific, and legitimate reasons for doing so:

> Dr. Bennett's opinion was entitled to less weight for several reasons. First, although the claimant may have a "problem" with her right leg, the evidentiary record does not support total preclusion from standing or walking throughout the day. Dr. Bennett's treatment notes indicate an antalgic gait with a tendency to limp, but he describes her coordination as good []. In an initial examination, he described headaches and seizures but he did not express concern about leg pain, or describe limitations in walking or standing []. The underlying treatment notes are sparse, documenting about two months of treatment from August of 2008 to October of 2008 []. Dr. Bennett states that he saw the claimant in April of 2010 (for headaches) but the evidentiary record contains little or no evidence from this time. There is little evidence in the record to support a total preclusion from postural activities. Finally, Dr. Bennett did not cite to any objective and clinical evidence, and the lack of explanation reduced the persuasiveness of his opinion.

Bell concedes that Dr. Bennett did not cite any clinical or objective evidence in making his assessment, but argues that the electromyography and nerve conduction tests study finding peripheral neuropathy is sufficient support for Dr. Bennett's opinion that she can stand or walk 0 hours in an 8-hour work day. Without further explanation, the ALJ was

not required to assume that a diagnosis of peripheral neuropathy precluded any walking or standing. Moreover, the ALJ's residual functional capacity assessment does not require Bell to walk or stand.

The ALJ complied with Social Security Rules by weighing Dr. Bennett's opinion in accord with the length of the treatment relationship, frequency of examination, nature and examination of the treatment relationship, relevant evidence supporting the opinion, and consistency with the record as a whole. Bell alleged disability beginning in July 2007. Dr. Bennett began treating Bell in August 2008 for headaches and seizures and noted her antalgic gait then, but did not attempt to diagnose her right leg problem (which began in 1994) until July 2010 when she asked him to complete the disability assessment. The record does not show that he ever treated Bell for peripheral neuropathy.

Further, Bell incorrectly contends "the ALJ accepts the opinion of the non-examining state agency physician who relegated the claimant to light to sedentary work." In fact, the ALJ stated that she gave weight to the state agency consultants' opinions, but extended Bell "some benefit of the doubt" in consideration of her "partially credible subjective complaints, the effects of pain or fatigue and any aggravating factors," and reduced the residual functional capacity assessment to the sedentary level.

Thus, the ALJ did not err by giving less weight to Dr. Bennett's opinion.

**B.     The ALJ Did Not Err in Evaluating Bell's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Bell's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Bell's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Bell's statements not credible to the extent she claims she is unable to perform sedentary work with simple and repetitive tasks. The ALJ did not find evidence of malingering.

The ALJ gave the following specific, clear, and convincing reasons, supported by substantial evidence, for finding Bell's subjective symptom testimony only partially credible:

> The claimant's testimony regarding her symptoms and her complete inability to engage in work activity was not fully persuasive, and she has admitted to the ability to perform a variety of daily activities, inconsistent with her disability allegations. In a function report, the claimant reported that she spent most of her time sitting in a chair watching TV, and she attended to most personal needs without difficulty. The claimant admitted that she cooks simple meals, does ceramics and reads (a couple of times a week) []. The third party described spending 5-6 hours with the claimant, watching television or reading. He noted that the claimant had no problems caring for her personal needs, with the exception of getting out of the tub; she could cook simple meals and do household chores such as laundry and dishes []. Such activities are consistent with the range of sedentary exertional activity described herein.

Bell does not dispute that she can perform sedentary activities, but rather contends that this evidence does not show that she is able to perform full-time sedentary work and the ALJ was required to cite reasons unrelated to the subjective testimony for partially discounting Bell's credibility. In fact, the ALJ stated multiple objective reasons for doing so: the treatment course was not consistent with Bell's allegations of incapacity, some of

- 9 -

the conditions existed while Bell was working, some showed significant improvement with medication and routine medical treatment, adverse side effects of medication were not documented in the record, and Bell admitted she stopped working for reasons other than her medical conditions.

Moreover, the ALJ expressly gave Bell's subjective symptom allegations "the benefit of the doubt" by limiting her residual functional capacity to sedentary work. Therefore, the ALJ did not err by finding Bell's subjective symptom testimony partially credible.

### C. At Step Four, the ALJ Did Not Err by Failing to Properly Consider the "Listings" at 20 C.F.R. § 404, Subpart P, Appendix I.

Bell contends the ALJ erred by failing to properly consider whether her COPD condition satisfied Listing 3.02(A). As explained above, at step three, the ALJ was required to consider whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404, and Bell bore the burden of proof at step three. The ALJ considered the Listings and, regarding Bell's COPD, stated: "Her spirometry results were abnormal, but they did not establish disability via the requirements of listing 3.02 (*Chronic pulmonary insufficiency*)."

Listing 3.02A sets the standard for finding chronic pulmonary insufficiency based on a person's height and pulmonary function testing. Listing 3.00E provides detailed instructions for pulmonary testing. It defines $FEV_1$ as the reported forced expiratory volume. Listing 3.00E also requires that the $FEV_1$ be the largest of at least three satisfactory forced expiratory maneuvers and that two of the satisfactory spirograms must be reproducible for both pre-bronchodilator and post-bronchodilator tests. To be reproducible, a value must not differ from the largest value by more than 5 percent or 0.1 L, whichever is greater.

Listing 3.00E directs that spirometry should be repeated after administration of an aerosolized bronchodilator if the pre-bronchodilator $FEV_1$ value is less than 70 percent of the predicted normal value. It states, "The effect of the administered bronchodilator in relieving bronchospasm and improving ventilatory function is assessed by spirometry," and the values used in Listing 3.02A "must only be used as criteria for the level of ventilatory impairment that exists during the individual's most stable state of health."

Listing 3.02A defines chronic pulmonary insufficiency for a person 67 inches tall as having an $FEV_1$ value equal to or less than 1.35 and for a person 68 inches tall as having an $FEV_1$ value equal to or less than 1.45. Three $FEV_1$ tests were performed in connection with Bell's disability application: May 5, 2008; August 5, 2008; and September 25, 2008. The May test results had a variance too great to be considered reproducible, and the examiner noted the variance was due to poor effort. The August test reported Bell's height as 67 inches, her pre-bronchodilator $FEV_1$ as 1.39, and her post-bronchodilator $FEV_1$ as 1.97. The September test reported her height as 68 inches, her pre-bronchodilator $FEV_1$ as 1.37, and her post-bronchodilator $FEV_1$ as 1.73. Regardless of whether Bell is 67 or 68 inches tall and whether the pre-bronchodilator $FEV_1$ should be considered, none of the values were equal to or less than 1.35. Therefore, the ALJ did not err by finding that Bell's spirometry results did not meet Listing 3.02A.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 8th day of April, 2013.

_____
Neil V. Wake
United States District Judge

- 11 -